**Jesse Merrithew**, OSB No. 074564
Email: jesse@lmhlegal.com
**Norah Van Dusen**, OSB No. 180114
Email: norah@lmhlegal.com
**Sara Long**, OSB No. 224433
Email: saralong@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092

**Rebecca J. Roe**, WSBA No. 7560
Email: roe@sgb-law.com
**Hong Jiang**, WSBA No. 51914
Email: jiang@sgb-law.com
**Benjamin C. Gauen**, WSBA No. 41815
Email: gauen@sgb-law.com
Schroeter Goldmark & Bender
401 Union Street, Suite 3400
Seattle, Washington 98101
Telephone: (206) 622-8000
Facsimile: (206) 682-2305
*Applications for Pro Hac Vice Forthcoming*

**Attorneys for Plaintiffs**

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| J.P., J.S., M.T.B., E.W.R.K., S.A.L. O.D.P, T.S., A.C.J., J.T.H., C.B.B., and D.T.K., | Case No. 6:26-cv-369 |
| Plaintiffs, | COMPLAINT |
| vs. | JURY TRIAL DEMANDED |
| OREGON YOUTH AUTHORITY, MARCIA ADAMS, KAREN BRAZEAU, ROBERT JESTER, BOBBY MINK, COLETTE PETERS, FARIBORZ PAKSERESHT, JOSEPH O'LEARY, GARY LAWHEAD, MIKE CONZONER, DARIN HUMPHREYS, MIKE | |

RIGGAN, SID THOMPSON, DAN BERGER,
and UNKNOWN STAFFERS #1-15,

    Defendants.

## NATURE OF ACTION

The Oregon Youth Authority ("OYA") employed Dr. Edward Gary Edwards for more than four decades as the primary physician at the MacLaren Youth Correctional Facility ("MacLaren") in Woodburn, Oregon. During that time, Edwards abused hundreds of vulnerable young men under the guise of providing medical care. Eleven of his victims are the Plaintiffs in this lawsuit.

Each Plaintiff was incarcerated as a minor child at MacLaren between 2001 and 2017, and received one or more "medical examinations" from Edwards. During these "exams," Edwards subjected Plaintiffs to genital touching, including fondling, masturbation, and anal digital penetration. This conduct was medically unnecessary and sexually motivated.

Because Edwards was a doctor and the exams took place in the MacLaren medical clinic, Plaintiffs did not immediately perceive Edwards' conduct as abusive. Some Plaintiffs assumed the conduct was acceptable because MacLaren staff joked about "Dr. Cold Fingers"—Edwards' nickname—and his "exams" rather than intervening to protect the vulnerable youth in their care. Though some Plaintiffs complained about or questioned the medical necessity of Edwards' exam procedures, OYA staff assured those Plaintiffs that Edwards was a medical professional who provided appropriate medical care. Plaintiffs' complaints or inquiries went unaddressed and uninvestigated, further creating the impression that Edwards' conduct was not abusive.

News broke in March 2025 of Edwards' predatory abuse that spanned decades and OYA's knowledge of complaints from youth and parents, suggesting that officials had systematically disregarded red flags for years. It was not until then or later that Plaintiffs learned of the extent of the abuse and OYA's responsibility in allowing it to continue unabated for over 40 years.

COMPLAINT - 2
(Case No. 6:26-cv-369)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

Individual Defendants in this case include former OYA Directors and MacLaren Superintendents, whose acts (and failures to act) enabled Edwards' abuse to persist for decades, including from 2001 to 2012 when Plaintiffs were in their care. The individual Defendants' actions deprived Plaintiffs of their fundamental rights.

This action is brought pursuant to 42 U.S.C. § 1983 for the violation of Plaintiffs' civil rights and under the Oregon Tort Claims Act for negligence.

## PARTIES

1.      Plaintiff J.P. is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

2.      Plaintiff J.S. is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

3.      Plaintiff M.T.B. is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

4.      Plaintiff E.W.R.K. is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

5.      Plaintiff S.A.L. is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

6.      Plaintiff O.D.P. is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

7.      Plaintiff T.S. is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

8.      Plaintiff A.C.J. is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

COMPLAINT - 3
(Case No. 6:26-cv-369)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA  98101
Phone (206) 622-8000 ● Fax (206) 682-2305

9.     Plaintiff J.T.H. is a resident of the state of Texas. He was, at all relevant times, a resident of the state of Oregon. He is proceeding under his initials.

10.     Plaintiff C.B.B. is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

11.     Plaintiff D.T.K. is a resident of the state of Nevada. He was, at all relevant times, a resident of the state of Oregon. He is proceeding under his initials.

12.     Defendant MARCIA ADAMS was the assistant Director of Health Services at OYA starting in 2011, the OYA supervising physician in 2017, and Director of Health Services in 2018. She remains in that position currently. She was Edwards' supervisor from 2017 until he resigned. All conduct alleged below occurred within the course and scope of her employment with OYA. Defendant Adams is sued in her individual capacity.

13.     Defendant KAREN BRAZEAU was the Director of OYA from 2001 through 2004. As the Director, she was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of her employment with OYA. Defendant Brazeau is sued in her individual capacity.

14.     Defendant ROBERT JESTER was the Director of OYA from 2004 through 2008. As the Director, he was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Jester is sued in his individual capacity.

15.     Defendant COLETTE PETERS was the Director of OYA from 2009 through 2012. As the Director, she was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of her employment with OYA. Defendant Peters is sued in her individual capacity.

COMPLAINT - 4
(Case No. 6:26-cv-369)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA  98101
Phone (206) 622-8000 ● Fax (206) 682-2305

16.     Defendant FARIBORZ PAKSERESHT was the Director of OYA from 2012 through 2017. As the Director, he was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Pakseresht is sued in his individual capacity.

17.     Defendant JOSEPH O'LEARY was the Director of OYA from 2017 through 2021. As the Director, he was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant O'Leary is sued in his individual capacity.

18.     Defendant GARY LAWHEAD was the Superintendent of MacLaren from 2002 through 2005. As the Superintendent, he was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Lawhead is sued in his individual capacity.

19.     Defendant MIKE CONZONER was employed as the Superintendent of MacLaren from 2005 through 2006. As the Superintendent, he was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Conzoner is sued in his individual capacity.

20.     Defendant DARIN HUMPHREYS was employed as the Superintendent of MacLaren from 2007 through 2008. As the Superintendent, he was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Humphreys is sued in his individual capacity.

21.     Defendant MIKE RIGGAN was employed as the Superintendent of MacLaren in 2008 to early 2010. As the Superintendent, he was employed by OYA, a state administrative

agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Riggan is sued in his individual capacity.

22.     Defendant SID THOMPSON was employed as the Superintendent of MacLaren from 2008 through 2013. As the Superintendent, he was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Thompson is sued in his individual capacity.

23.     Defendant DAN BERGER was employed as the Superintendent of MacLaren from 2014 through 2025. As the Superintendent, he was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Berger is sued in his individual capacity.

24.     All the individual Defendant Superintendents listed above will be collectively referred to as "Superintendents."

25.     All the individual Defendant Directors listed above will be collectively referred to as "Directors."

26.     Based on information and belief, UNKNOWN STAFFERS #1-15 are current or former employees of OYA, a state administrative agency, and were acting under color of state law. Their identities are currently unknown to Plaintiffs. UNKNOWN STAFFERS #1-15 were aware of reports and indications that Edwards posed a danger of sexual abuse to youth in OYA custody. All conduct alleged below occurred within the course and scope of their employment with OYA. They are sued in their individual capacities.

27.     Edward Gary Edwards was employed by OYA, a state administrative agency, as a physician and was acting under color of state law. As discussed below, Edwards engaged in intentional conduct resulting in one or more of the following: mental injury, rape, sexual assault,

COMPLAINT - 6
(Case No. 6:26-cv-369)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

SCHROETER, GOLDMARK & BENDER
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

and/or sexual exploitation of Plaintiffs as those terms are defined in ORS 12.117 or ORS 12.115. All conduct alleged herein occurred within the course and scope of his employment with OYA.

28.    The OYA is the state agency that operates MacLaren. Under the Oregon Tort Claims Act, it is subject to liability for the torts of its officers, employees, and agents acting within the scope of their employment or duties.

## GENERAL ALLEGATIONS

### *"Doctor Cold Fingers"*

29.    In 1977, Edwards started working for OYA as a pediatrician providing medical examinations, diagnoses, and treatment to youth incarcerated at MacLaren. On information and belief, Edwards was named chief medical officer at MacLaren in 1997.

30.    On information and belief, Edwards was the primary medical provider at MacLaren through at least 2017. He was the only doctor working on site full-time at MacLaren during those years and oversaw medical care for all youth at MacLaren. OYA required every youth who entered MacLaren to participate in an initial intake examination, periodic physicals, and to receive medical care at the MacLaren clinic. MacLaren's medical clinic was the youths' only on-site source of medical care, and, as a result, all youth were required to have some level of physical contact with Edwards for anything from a sore throat to a broken bone.

31.    Edwards was infamously known as "Dr. Cold Fingers" by youth and staff for abusively touching detained youth—specifically young boys and men—with ungloved hands during exams. The abusive touching included digitally penetrating their anuses; stroking or masturbating their penises; and fondling their testicles. This abuse occurred during intake exams, follow-up physicals, and other medical visits. These encounters occurred in Edwards' exam room when no nurse or chaperone was required by OYA to be present. Young males coming from

isolation or Secure Intensive Treatment Program ("SITP") were required to be cuffed and shackled during these visits.

32.    MacLaren staff made jokes about Edwards, and some corrections officers weaponized medical visits by threatening to send youth to "Dr. Cold Fingers" for disobeying staff directions. Youth who balked at Edwards' exams were threatened with "the hole" if they persisted in resisting.

33.    On occasion, Edwards resorted to physical force when youth declined medical care.

34.    Other staff members glossed over youths' inquiries about the medical necessity of Edwards' exams by explaining that he was a doctor and therefore he knew what he was doing.

35.    Older adjudicated youth frequently warned newly arrived boys about Edwards.

36.    As early as 1999, and repeatedly after that, multiple youth reported Edwards to MacLaren staff, including counselors. Staff and administrators at OYA took no action to protect youth from Edwards' sexual abuse; instead, OYA allowed the abuse to continue unabated in plain sight.

37.    OYA empowered Edwards to perform the duties of a doctor and knew that he was in a position of authority, power, and trust over the youth at MacLaren, including Plaintiffs. OYA retained the right to control the delivery of appropriate medical care, including the exam procedures used, proper patient privacy protections, the presence or absence of chaperones during medical exams, medical charting procedures, and reporting procedures for complaints from youth patients.  Yet in the face of multiple complaints by multiple youth and widespread knowledge of Edwards' reputation—including his disturbing nickname—OYA failed to take even minimally protective steps, such as requiring a chaperone during "exams" or consulting with other medical professionals about the necessity of Edwards' invasive "procedures."

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA  98101
Phone (206) 622-8000 ● Fax (206) 682-2305

38.     OYA's failure to act caused Plaintiffs to believe that Edwards' behavior was standard medical care, a belief reinforced by OYA staff's repeated assurances. Plaintiffs reasonably relied upon these assurances.

***OYA's Knowledge of Problems with Edwards***

39.     Defendants in this case knew or should have known that OYA has a long history of turning a blind eye to reports of staff sexually abusing youth at its facilities by failing to investigate reports of abuse, properly train staff, and implement or properly follow policies that would protect youth from sexual abuse by staff.

40.     Despite this knowledge, and even when faced with credible information that Edwards was engaging in inappropriate behavior with youth at MacLaren, Defendant Directors, Superintendents, and staff failed to take even minimal steps to address the issue. For example, Defendants failed to:

    a.  Question or investigate why the only full-time doctor on staff at MacLaren was referred to as "Dr. Cold Fingers";

    b.  Investigate complaints and concerns of youth and staff;

    c.  Consult with any outside agency or resources regarding the medical necessity or appropriateness of the medical exams Edwards performed;

    d.  Report Edwards' conduct to law enforcement;

    e.  Report Edwards' conduct to Oregon Department of Human Services (ODHS);

    f.  Report Edwards' conduct to the Oregon Medical Board or other supervisory agencies;

    g.  Increase supervision of youth during encounters with Edwards;

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA  98101
Phone (206) 622-8000 ● Fax (206) 682-2305

h.  Educate staff regarding appropriate behavior between a doctor and a youth patient;

i.  Implement a functional grievance system;

j.  Track grievances or complaints regarding Edwards specifically; and

k.  Investigate grievances, including resolving founded investigations with appropriate discipline, such as terminating Edwards' employment.

41.     Indeed, despite credible, repeated concerns about Edwards, Defendants continued to promote him throughout his tenure at MacLaren, further indicating to the youth at MacLaren that OYA administration and staff approved of Edwards' conduct and viewed it as acceptable behavior from a medical professional.

***PREA Standards***

42.     When Congress passed the Prison Rape Elimination Act ("PREA") in 2003, it included standards to substantially reduce the risk of sexual abuse, harassment, and exploitation of youth in custody.

43.     Individual OYA Defendants were aware of the requirements of the PREA Standards for Juvenile Facilities.

44.     OYA adopted policies with respect to sexual abuse of youth that are designed to implement the PREA standards.

45.     In 2005, OYA adopted its own "zero-tolerance" policy toward sexual abuse and harassment in its youth facilities, aligning its practices with PREA principles even before the federal standards were finalized.

46.     In 2006, OYA created a Professional Standards Office ("PSO") to investigate allegations of sexual abuse and sexual harassment—a significant early implementation step toward PREA compliance.

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA  98101
Phone (206) 622-8000 ● Fax (206) 682-2305

47.     In 2009, OYA established a full-time PREA coordinator in the PSO and requested and received technical assistance from the National Institute of Corrections and the Moss Group to assess OYA's compliance with PREA standards. In response to recommendations from these groups, OYA updated its zero-tolerance policy in 2010 and designated a Sexual Assault Response Team in every close-custody facility and parole/probation office to address the medical and mental health needs of victims of sexual abuse.

48.     Individual OYA Directors failed in their obligation to supervise, direct, and/or manage the PSO to ensure (i) staff had proper training, including how to maintain PREA compliance; (ii) adequate staff to complete investigations; (iii) complaints were timely investigated and completed; and (iv) staff appropriately responded to PSO investigations, including reporting cases to the state police, disciplining OYA staff, and/or taking other remedial actions to prevent future abuse.

49.     Despite OYA's well known history of allowing the sexual abuse of youth in its care, individual Directors failed to ensure that OYA followed its own policies designed to protect youth, such as Plaintiffs, from sexual abuse by staff such as Edwards.

50.     Individual Directors and Superintendents were responsible for ensuring MacLaren's compliance with PREA and for enacting and enforcing OYA policies to implement PREA standards at MacLaren, including appointing a PREA Compliance Manager ("PCM") to coordinate the facility's compliance efforts.

51.     Individual Directors and Superintendents had an obligation to ensure that staff strictly adhered to PREA standards and OYA's own policies designed to prevent sexual abuse of youth by staff, including ensuring that staff reported any suspicion of sexual abuse to the PCM.

52.     By failing to ensure that OYA's policies to prevent, investigate, and respond to sexual abuse were followed or enforced at MacLaren, and by ignoring credible information that

COMPLAINT - 11
(Case No. 6:26-cv-369)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

Edwards was engaging in sexual abuse of youth under the guise of medical care, individual OYA Directors and Superintendents consciously disregarded widespread sexual abuse of youth in their care.

53.    On March 13, 2025, Oregon Department of Administration Services ("DAS") released an Investigation Report ("DAS Report") regarding allegations of mismanagement and governmental misconduct at OYA.

54.    The DAS Report uncovered evidence that during an audit of the PSO, "[s]everal current and past OYA employees of the PSO allegedly reported . . . problems with the youth cases to OYA administrators (past and present). These reports were allegedly met with an apathetic or passive response to the associated safety concerns of youth in custody."[1]

## ABUSE OF J.P.

55.    J.P. is 39 years of age. J.P. was adjudicated in 2000 and placed at MacLaren in or about 2000 or 2001.

56.    J.P. was required to undergo a medical examination conducted by Edwards. Under the guise of a medical care, Edwards fondled J.P.'s testicles and penis until J.P. ejaculated. Edwards also digitally penetrated J.P.'s rectum.

57.    Edwards claimed that he was making sure J.P. was healthy. J.P. believed that Edwards was a medical professional and was therefore performing an appropriate exam.

58.    J.P. did not openly talk about what happened and at times, denied to himself that anything happened.

---

[1] Oregon Dep't of Admin. Servs. Investigation Report, Case No. 123520 at 7.

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

SCHROETER, GOLDMARK & BENDER
401 Union Street ● Suite 3400
Seattle, WA  98101
Phone (206) 622-8000 ● Fax (206) 682-2305

59.    In the summer of 2025, J.P. participated in a group that dealt with trauma. It was at that time that J.P. began to recognize that Edwards did not engage in proper medical exam and the impact of Edwards' abuse.

60.    As a result of Edwards' abuse, J.P. has experienced emotional distress, including a distrust of authority figures and confusion over his sexuality. J.P. is still realizing the full harmful impact of Edwards' abuse.

## ABUSE OF J.S.

61.    J.S. is 38 years of age. Around 1999 or 2000, J.S. was adjudicated and committed to the care and custody of OYA.

62.    Between 2001 and 2005, J.S. was placed at MacLaren on more than one occasion. J.S. saw Edwards at MacLaren for medical exams.

63.    During an intake exam at MacLaren, Edwards fondled J.S.'s testicles and penis under the guise of medical care. J.S. developed an erection during the exam. Although the exam made J.S. feel uncomfortable, Edwards explained that he needed to check for cancer and tumors, which J.S. accepted as true.

64.    In 2025, J.S. saw a news story about lawsuits against OYA related to Edwards' conduct. It was at this time that J.S. learned others had reported being abused by Edwards and that he too was a victim. He became aware that OYA could have prevented or stopped the abuse but instead allowed Edwards' abuse to continue for decades.

65.    J.S. has experienced emotional distress because of Edwards' conduct, including shame, embarrassment, distrust of medical providers, and questioning his sexuality.

## ABUSE OF M.T.B.

66.    M.T.B. is 39 years of age. M.B. was adjudicated and placed at MacLaren on three occasions between 2002 and 2004 when he was 15 to 17 years of age.

COMPLAINT - 13
(Case No. 6:26-cv-369)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA  98101
Phone (206) 622-8000 ● Fax (206) 682-2305

67.     On the first occasion, he had to submit to a physical examination by Edwards. Edwards fondled his testicles and his anal area under the guise of medical care.

68.     On another occasion, Edwards put his finger in M.T.B.'s rectum claiming he was checking for prostate cancer. When M.T.B. questioned why he would be examined at his age, Edwards claimed there was new science out.

69.     Edwards did not wear gloves during either examination.

70.     M.T.B. thought at the time that the examinations were weird but did not see it as child abuse, as other youth had the same thing happen to them.

71.     Recently, M.T.B. saw news reports about Edwards' extensive and longstanding abuse of boys at MacLaren. It was at that time that M.T.B. realized Edwards' conduct was abuse and not part of normal medical care.

72.     It was also at that time that M.T.B. became aware that OYA could have prevented or stopped the abuse but instead allowed Edwards' abuse to continue for decades.

73.     As a result of the abuse, M.T.B. has experienced anger and distrust of others, particularly towards doctors. M.T.B. is still realizing the full harmful impact of Edwards' abuse.

### ABUSE OF E.W.R.K.

74.     E.W.R.K. is 39 years old. In 2002, E.W.R.K. was adjudicated and committed to the care and custody of OYA. OYA placed E.W.R.K. at MacLaren when he was approximately 15 years old.

75.     E.W.R.K. saw Edwards for medical exams at MacLaren. During these exams, including E.W.R.K.'s intake physical, Edwards fondled E.W.R.K.'s genitals and penis and inserted his finger inside E.W.R.K.'s rectum under the guise of medical care. E.W.R.K. developed an erection during the touching.

76.     Although E.W.R.K. questioned the medical necessity of the touching directly with Edwards, Edwards represented that such examinations were part of a normal process that

COMPLAINT - 14
(Case No. 6:26-cv-369)

*LEVI MERRITHEW HORST PC*
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

E.W.R.K. was required to undergo. E.W.R.K. feared others finding out that he developed an erection during the medical exams.

77.    In 2025, E.W.R.K. learned about the lawsuits against OYA related to Edwards' conduct during medical exams. It was at this time that E.W.R.K. learned Edwards had subjected youth to sexual abuse at MacLaren.

78.    It was also at that time that E.W.R.K. became aware that OYA could have prevented or stopped the abuse but instead allowed Edwards' abuse to continue for decades.

79.    E.W.R.K. has experienced emotional distress because of Edwards' conduct, including fear, shame, anger, embarrassment, and distrust of medical providers.

## ABUSE OF S.A.L.

80.    S.A.L. is 36 years of age. In 2001, he was adjudicated and committed to the care and custody of OYA. OYA placed S.A.L. at MacLaren in or around 2003 and again in or around 2004.

81.    Under the guise of medical care, Edwards fondled S.A.L.'s testicles on multiple occasions.

82.    When S.A.L. asked why Edwards was fondling his testicles, Edwards responded that it was normal to do so during a medical physical to check for lumps.

83.    S.A.L. assumed that Edwards' conduct constituted appropriate medical care.

84.    In or around October 2025, S.A.L. learned of the claims against Edwards. It was at that time that S.A.L. realized that Edwards' conduct was not part of normal medical care.

85.    It was also at that time that S.A.L. became aware that OYA could have prevented or stopped the abuse but instead allowed Edwards' abuse to continue for decades.

COMPLAINT - 15
(Case No. 6:26-cv-369)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA  98101
Phone (206) 622-8000 ● Fax (206) 682-2305

86.     S.A.L. struggles with emotional distress because of Edwards' abuse, including a distrust of doctors and authority figures. S.A.L. is still reflecting on the full impact of Edwards' abuse.

## ABUSE OF O.D.P.

87.     O.D.P. is 37 years of age. In or around 2003, he was adjudicated and committed to the care and custody of OYA. OYA placed O.D.P. at MacLaren at various times between 2003 to 2006.

88.     During an intake medical exam, Edwards grabbed O.D.P.'s testicles and penis and rubbed his penis. Edwards then inserted a finger into O.D.P.'s anus under the guise of medical care.

89.     Edwards repeated this abusive conduct on subsequent medical visits.

90.     When O.D.P. tried to refuse to see Edwards, OYA staff told O.D.P. that he would be disciplined if he refused medical treatment. The staff's reassurance and inaction communicated to O.D.P. that Edwards' conduct constituted appropriate medical care.

91.     In or around the beginning of December 2025, O.D.P. learned of the claims against Edwards. It was at that time that O.D.P. realized that Edwards' conduct was not part of normal medical care.

92.     It was also at that time that O.D.P. became aware that OYA could have prevented or stopped the abuse but instead allowed Edwards' abuse to continue for decades.

93.     O.D.P. has struggled with emotional distress because of Edwards' abuse, including embarrassment and distrust of doctors. O.D.P. is still realizing the full harmful impact of Edwards' abusive conduct.

*LEVI MERRITHEW HORST PC*
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

**ABUSE OF T.S.**

94.    T.S. is 35 years old. In 2004, when he was 15 years old, he was adjudicated in juvenile court and committed to the legal and physical custody of OYA. OYA placed T.S. at MacLaren.

95.    Edwards conducted a medical intake examination on T.S. within a week of T.S.'s arrival at MacLaren.

96.    During this examination, Edwards fondled T.S.'s penis and testicles and touched his anus under the guise of medical care.

97.    T.S. did not know at the time that Edwards' conduct was not medical care but was in fact abuse. T.S. never discussed the incident with anyone.

98.    When T.S. learned about Edwards' other victims through news stories in September 2025, he realized Edwards' conduct did not constitute appropriate medical care but was in fact abusive.

99.    It was at that time that T.S. became aware that OYA could have prevented or stopped the abuse but instead allowed Edwards' abuse to continue for decades.

100.    It was also at that time that T.S. began to realize that his lack of trust and discomfort with medical professionals was likely caused by Edwards' abuse and that the abuse led to feelings of shame and anxiety.

**ABUSE OF A.C.J.**

101.    A.C.J. is 35 years of age. In or around 2006, he was convicted and committed to the care and custody of OYA. OYA placed A.C.J. at MacLaren starting in or around 2006.

102.    During an intake medical exam, Edwards instructed A.C.J. to pull down his pants and underwear.

COMPLAINT - 17
(Case No. 6:26-cv-369)

*LEVI MERRITHEW HORST PC*
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

103. Edwards then fondled A.C.J.'s testicles, pulled back A.C.J.'s foreskin, and touched A.C.J.'s penis under the guise of medical care.

104. When A.C.J. remarked that he felt awkward, Edwards assured him that this was part of a normal physical exam.

105. Given the medical setting and OYA staff's inaction despite knowing Edwards' nickname as "Doctor Cold Fingers," A.C.J. did not recognize Edwards' conduct as abuse.

106. In or around November 2025, A.C.J. learned of the claims against Edwards. It was at that time that A.C.J. realized that Edwards' conduct was not part of normal medical care.

107. It was also at that time that A.C.J. became aware that OYA could have prevented or stopped the abuse but instead allowed Edwards' abuse to continue for decades.

108. A.C.J. has since been reflecting on the harmful impact of Edwards' abuse on his well-being, including causing embarrassment, depression, confusion with his sexuality, and distrust of doctors

**ABUSE OF J.T.H.**

109. J.T.H. is 38 years of age. In 2006, when he was 17 years old, he was convicted in adult court and sentenced to a term of incarceration with the Oregon Department of Corrections. By operation of law, he was placed in the physical custody of the OYA. OYA placed him at MacLaren.

110. Shortly after arriving at MacLaren, J.T.H. had an intake medical examination with Edwards. During this examination, Edwards fondled J.T.H.'s testicles under the guise of medical care.

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

111.    In subsequent medical appointments, sometimes J.T.H. would be called to the clinic and receive legitimate medical attention for his needs, while other times Edwards would require J.T.H. to undergo unnecessary genital exams.

112.    As a result of Edwards' mixing of legitimate medical attention and sexually abusive contact, combined with the fact that Edwards was a doctor, J.T.H. did not immediately recognize these incidents as abuse.

113.    J.T.H. now lives out of state and did not learn that victims of Edwards' abuse had come forward when the stories first broke in March 2025. He began learning about Edwards' victims later in the summer of 2025. It was at this time that he began to realize that Edwards' conduct toward him was not legitimate medical care and was in fact abuse.

114.    He also began to realize that Defendants, who were in charge of keeping him safe at MacLaren, must have known of Edwards' abuse and allowed it to continue.

115.    As he reflected on the abuse he suffered, J.T.H. has started to connect the adverse consequences in his life as related to Edwards' abuse, including depression, anxiety, and anger. He also began to recognize that, when he was later incarcerated in adult facilities, his feelings of extreme vulnerability were related to being abused by Edwards while incarcerated at MacLaren.

**ABUSE OF C.B.B.**

116.    C.B.B. is 29 years of age. In 2012, when he was 16 years old, he was convicted in adult court and sentenced to a term of incarceration in the Oregon Department of Corrections, who by operation of law placed him in the physical custody of the OYA.

117.    The OYA initially placed C.B.B. at the Hillcrest facility on October 25, 2012.

118.    Edwards conducted a medical intake examination on C.B.B. within a week of C.B.B.'s arrival at Hillcrest.

COMPLAINT - 19
(Case No. 6:26-cv-369)

*LEVI MERRITHEW HORST PC*
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

119.    During this examination, Edwards fondled C.B.B.'s testicles and penis.

120.    C.B.B. did not know at the time that Edwards' conduct was not medical care but was in fact abuse. C.B.B. never discussed the incident with anyone.

121.    C.B.B. learned about Edwards' other victims through a conversation with another prisoner who was also a victim in late October or early November, 2025. After this conversation, he realized Edwards' conduct did not constitute appropriate medical care but was in fact abusive.

122.    It was at that time that C.B.B. became aware that OYA could have prevented or stopped the abuse but instead allowed Edwards' abuse to continue for decades.

123.    It was also at that time that C.B.B. realized that his lack of trust and discomfort with being alone with people of authority was likely caused by Edwards' abuse.

**ABUSE OF D.T.K.**

124.    D.T.K. is 25 years of age. In 2018, when he was 17 years old, he was convicted in adult court and sentenced to a term of incarceration with the Oregon Department of Corrections. By operation of law, he was placed in the physical custody of the OYA. OYA placed him at MacLaren.

125.    Shortly after arriving at MacLaren, D.T.K. had an intake medical examination with Edwards. During this examination, Edwards fondled D.T.K.'s testicles under the guise of medical care.

126.    In a subsequent medical appointment, Edwards started caressing D.T.K.'s body and placed a hand on his buttocks. D.T.K. pushed him off and asked what he was doing. Edwards promptly ended the exam.

127.    D.T.K. reported this second incident to his QMHP, Emily Echtenkamp. D.T.K. was unaware at the time that Echtenkamp was sexually abusing at least two other youth during this

*LEVI MERRITHEW HORST PC*
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

time period. After reporting the incident to Echtenkamp, other staff members began actively dissuading D.T.K. from pursuing the matter further, convincing him that what happened was not abuse.

128.    As a result of Edwards' gaslighting and OYA staff's repeated claims that Edwards' conduct did not constitute abuse, D.T.K. did not immediately recognize these incidents as abuse.

129.    D.T.K. now lives out of state and therefore did not learn about Edwards' abusive conduct when the stories about victims coming forward first broke in March 2025. He began learning about Edwards' victims later in the summer of 2025. At that point, he began speaking to friends he made while at MacLaren, some of whom opened up about their experiences with Edwards. As his friends began opening up, D.T.K. began to realize that Edwards' conduct did not constitute appropriate medical care but was in fact abusive.

130.    It was at that time that D.T.K. became aware that OYA could have prevented or stopped the abuse but instead allowed Edwards' abuse to continue for decades.

131.    It was also at that time that D.T.K. began realizing that he was bottling up the trauma he suffered related to Edwards' abusive conduct. He started to realize that his feelings of powerlessness and feeling less than human were caused by Edwards' conduct.

**FIRST CLAIM FOR RELIEF**
**42 USC § 1983 – Civil Rights Violation**
**(Substantive Due Process - Violation of 14th Amendment)**
(Plaintiffs J.P., J.S., M.T.B., E.W.R.K., S.A.L., O.D.P., and T.S. Against All Individual Defendants)

132.    Plaintiffs J.P., J.S., M.T.B., E.W.R.K., S.A.L., O.D.P., and T.S. ("Adjudicated Plaintiffs") reallege and incorporate herein paragraphs 1 through 131.

133.    All individual Defendants were working within the course and scope of their employment at the OYA when they engaged in the wrongful conduct alleged above.

COMPLAINT - 21
(Case No. 6:26-cv-369)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

134.    Edwards and all individual Defendants were acting under color of state law.

135.    Edwards and all individual Defendants were working as staff members or employees of a youth correctional facility.

136.    Plaintiffs were confined to MacLaren as adjudicated youth at the time they were abused by Edwards as alleged above.

***Edwards***

137.    Edwards touched Adjudicated Plaintiffs in a sexual manner without legitimate penological or medical justification or purpose.

138.    Edwards touched Adjudicated Plaintiffs in a sexual manner that was not reasonably related to any legitimate government objective.

139.    Edwards acted for his own sexual gratification.

140.    Edwards' sexual abuse of Adjudicated Plaintiffs constituted a substantial departure from professional judgment, practice, or standards.

141.    Edwards failed to provide for Adjudicated Plaintiffs' reasonable safety while confined in OYA facilities by repeatedly engaging in predatory sexual conduct with Adjudicated Plaintiffs.

***Individual Defendants***

142.    Directors and Superintendents created the conditions at MacLaren under which Edwards' sexual abuse of Adjudicated Plaintiffs was possible.

143.    Those conditions put Adjudicated Plaintiffs at substantial risk of suffering serious harm, namely, the risk that Adjudicated Plaintiffs would be sexually abused by Edwards.

144.    The Directors and Superintendents failed to take reasonable available measures to abate the risk that Adjudicated Plaintiffs would be sexually abused by Edwards.

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA  98101
Phone (206) 622-8000 ● Fax (206) 682-2305

145.    The Directors and Superintendents, in failing to act to protect Adjudicated Plaintiffs from sexual abuse by Edwards, failed to provide for Adjudicated Plaintiffs' reasonable safety.

146.    The Directors' and Superintendents' failure to take reasonable available measures, as alleged above, constituted a substantial departure from professional judgment, practice, or standards.

147.    In so doing all of the above, given the history at OYA, the Directors and Superintendents evinced deliberate indifference to Adjudicated Plaintiffs' right to be free from sexual contact with Edwards.

148.    No Defendants took reasonable, appropriate, and legally mandated steps to stop Edwards' sexual abuse from occurring.

149.    Pursuant to 42 § USC §1988, Adjudicated Plaintiffs are entitled to recover reasonable and necessary attorneys' fees and costs incurred in the prosecution of this action.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Civil Rights Violation**
**(Cruel and Unusual Punishment - Violation of 8th Amendment)**
(Plaintiffs A.C.J., J.T.H., C.B.B., and D.T.K. Against All Individual Defendants)

150.    Plaintiffs A.C.J., J.T.H., C.B.B., and D.T.K. ("Convicted Plaintiffs") reallege and incorporate herein paragraphs 1 through 131.

151.    All individual Defendants were working within the course and scope of their employment at the OYA when they engaged in the wrongful conduct alleged above.

152.    Edwards and all individual Defendants were acting under color of state law.

153.    Edwards and all individual Defendants were working as staff members or employees of a youth correctional facility.

154.    Convicted Plaintiffs were confined to MacLaren as convicted adults at the time they were abused by Edwards as alleged above.

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA  98101
Phone (206) 622-8000 ● Fax (206) 682-2305

***Edwards***

155.    Edwards touched Convicted Plaintiffs in a sexual manner without legitimate penological or medical justification or purpose.

156.    Edwards touched Convicted Plaintiffs in a sexual manner that was not reasonably related to any legitimate government objective.

157.    Edwards acted for his own sexual gratification.

158.    Edwards' sexual abuse of Convicted Plaintiffs constituted a substantial departure from professional judgment, practice, or standards.

159.    Edwards failed to provide for Convicted Plaintiffs' reasonable safety while confined in OYA facilities by repeatedly engaging in predatory sexual conduct with Convicted Plaintiffs.

***Individual Defendants***

160.    Directors and Superintendents created the conditions at MacLaren under which Edwards' sexual abuse of Convicted Plaintiffs was possible.

161.    Those conditions put Convicted Plaintiffs at substantial risk of suffering serious harm, namely, the risk that Convicted Plaintiffs would be sexually abused by Edwards.

162.    The Directors and Superintendents failed to take reasonable available measures to abate the risk that Convicted Plaintiffs would be sexually abused by Edwards.

163.    The Directors and Superintendents, in failing to act to protect Convicted Plaintiffs from sexual abuse by Edwards, failed to provide for Convicted Plaintiffs' reasonable safety.

164.    The Directors' and Superintendents' failure to take reasonable available measures, as alleged above, constituted a substantial departure from professional judgment, practice, or standards and served no penological justification.

COMPLAINT - 24
(Case No. 6:26-cv-369)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

165.    In so doing all of the above, given the history at OYA, the Directors and Superintendents evinced deliberate indifference to Convicted Plaintiffs' right to be free from sexual contact with Edwards and constituted wanton and unnecessary infliction of harm.

166.    No Defendants took reasonable, appropriate, and legally mandated steps to stop Edwards' sexual abuse from occurring.

167.    Pursuant to 42 USC §1988, Convicted Plaintiffs are entitled to recover reasonable and necessary attorneys' fees and costs incurred in the prosecution of this action.

**THIRD CLAIM FOR RELIEF**
**Sexual Battery of Child – Respondeat Superior**
(All Plaintiffs Against Defendant OYA)

168.    Plaintiffs reallege and incorporate herein paragraphs 1 through 131.

169.    While acting in the course and scope of his employment for Defendant OYA, Edwards engaged in harmful and offensive touching of Plaintiffs to which Plaintiffs did not or could not consent, including groping Plaintiffs' genitals and digitally penetrating certain Plaintiffs' rectums, as set out specifically above.

170.    Acts within the course and scope of Edwards' employment with Defendant OYA led to or resulted in the sexual batteries and exploitation of Plaintiffs.

171.    As a direct result of Edwards' sexual batteries and exploitation, Plaintiffs have incurred economic and noneconomic damages as set out more fully above.

172.    Defendant OYA is vicariously liable for the sexual batteries and exploitation of Edwards. Therefore, Plaintiffs are entitled to compensatory damages from Defendant OYA in an amount to be determined by a jury.

COMPLAINT - 25
(Case No. 6:26-cv-369)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA  98101
Phone (206) 622-8000 ● Fax (206) 682-2305

### THIRD CLAIM FOR RELIEF
### Negligence under OTCA
(All Plaintiffs Against State of Oregon)

173.   Plaintiffs reallege and incorporate herein paragraphs 1 through 131.

174.   OYA, acting through its agent and/or employees, was negligent and at fault in one or more of the following ways:

a.   Failing to adequately investigate reports of inappropriate conduct by Edwards;

b.   Failing to ensure staff monitored interactions between Edwards and youth;

c.   Failing to train, enforce, or implement PREA standards designed to detect, prevent, stop, and/or investigate sexual misconduct of youth by staff;

d.   Failing to train, enforce, or implement OYA policies designed to detect, prevent, stop, and/or investigate sexual misconduct of youth by staff;

e.   Failing to investigate why Edwards was generally known by staff and youth as "Dr. Cold Fingers";

f.   Ignoring continuing and credible complaints from youth about ongoing sexual misconduct by Edwards;

g.   Failing to report Edwards' abuse to ODHS; and

h.   Failing to complete investigations so that complaints could reach adjudication and findings could be reported or disclosed to OYA leadership to ensure proper discipline (including reporting to law enforcement), training, and/or remediation.

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

175.    The above acts and omissions not only failed to prevent the known risk of staff subjecting youth to sexual abuse, but also actively allowed such misconduct to continue unabated for decades.

## NOTICE OF POTENTIAL CONSTITUTIONAL QUESTION

176.    As to any claim for relief, to the extent that any of the Defendants seek to reduce any compensatory damage verdict in favor of Plaintiffs on the basis of statutory damages limits from former ORS 30.270 (repealed in 2009), Plaintiffs aver that such damages limits are constitutionally inadequate as applied to this case.

## DAMAGES

177.    As a direct and proximate result of the conduct of Defendants, Plaintiffs suffered economic and noneconomic damages, including:

    a.    Mental and emotional injury; and

    b.    Loss of Plaintiffs' civil rights to be free from sexual contact by staff members while incarcerated at a youth correctional facility.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court will enter a Judgement in their favor, and against Defendants, as follows:

    a.    Grant Plaintiffs compensatory damages against Defendants in an amount to be determined at trial;

    b.    Award Plaintiffs reasonable costs, expenses, and attorney fees; and

    c.    Grant Plaintiffs such further relief as this Court deems just and equitable under the circumstances.

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA  98101
Phone (206) 622-8000 ● Fax (206) 682-2305

**DATED** this 25th day of February, 2026.

LEVI MERRITHEW HORST PC

s/ Norah Van Dusen
JESSE MERRITHEW, OSB # 074564
NORAH VAN DUSEN, OSB # 180114
SARA LONG, OSB # 224433
610 SW Alder Street, Suite 415
Portland, OR 97205-3605
Tel: (971) 229-1241
Email: jesse@lmhlegal.com
Email: norah@lmhlegal.com
Email: saralong@lmhlegal.com

SCHROETER GOLDMARK & BENDER

s/ Rebecca J. Roe
REBECCA J. ROE, WSBA #7560
HONG JIANG, WSBA # 51914
BENJAMIN C. GAUEN, WSBA # 41815
401 Union Street, Suite 3400
Seattle, WA 98101
Tel:  (206) 622-8000 | Fax:  (206) 682-2305
Email: roe@sgb-law.com
Email: jiang@sgb-law.com
Email: gauen@sgb-law.com

*Counsel for Plaintiffs*

COMPLAINT - 28
(Case No. 6:26-cv-369)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA  98101
Phone (206) 622-8000 ● Fax (206) 682-2305